IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MICHAEL BUU TRUONG,

   Appellant,

v.

MARK L. CRANDALL, KENNETH MERRELL, ECHO MERRELL,

   Appellees,

and WAYNE GODARE,

   Trustee.

No. 3:23-cv-01063-MO

OPINION AND ORDER

MOSMAN, J.,

 This matter comes before me on Appellant's Notice of Appeal and Motion for Leave to Appeal Interlocutory Order [ECF 1]. Appellee Mark L. Crandall filed a Response in opposition [ECF 4], and Appellant replied on August 4, 2023. [ECF 5]. Appellees Kenneth Merrell and Echo Merrell did not file a Response, nor did Trustee Wayne Godare. For the reasons below, I DENY Appellant's Motion.

## BACKGROUND

 Appellant Michael Buu Truong owns two properties, which the parties refer to as the Airbnb Property and the Vacant Lot. Mem. Decision [ECF 1] at 2. Jeff Roberts is an agent of the Crandall Group and represented the Merrells, who were interested in purchasing the properties. *Id.*

1 – OPINION AND ORDER

at 3. The parties formed a contract, referred to as "the Contract," which was to be signed no later than 5:00 p.m. on April 1, 2021. *Id.* The Merrells signed the Contract on March 31, and Mr. Truong signed it shortly after the 5:00 p.m. deadline. *Id.* The closing date was scheduled for June 1, 2021. *Id.* at 4. By the time of closing, Mr. Truong had second thoughts and communicated his intent to rescind the Contract to the Merrells, arguing in part that the Contract was invalid because he executed it late. *Id.* The Merrells submitted the dispute to arbitration. *Id.* After the arbitration hearing, the arbitrator decided that the Merrells were entitled to specific performance of the Contract, money damages, and costs. *Id.* at 4–5.

Mr. Truong filed a Chapter 13 petition for bankruptcy on May 12, 2022. Mem. Decision [ECF 1] at 2. This stayed further arbitration proceedings. *Id.* at 5. In his proposed plan, Mr. Truong moved to reject the Contract with the Merrells as an executory contract pursuant to 11 U.S.C. § 365. *Id.* at 2. The Merrells objected to Mr. Truong's plan, arguing that the Contract is not subject to rejection as an executory contract and that Mr. Truong's plan was filed in bad faith. *Id.* Mr. Crandall also objected to Mr. Truong's plan on various grounds including feasibility. *Id.* The bankruptcy court narrowed the questions to one: Whether the Contract was an executory contract subject to rejection. *Id.*

The bankruptcy court held that the Contract is an executory contract, but rejection is not warranted because Mr. Truong did not offer any business rationale for rejection. The court explained that Mr. Truong bears the burden of showing that it should confirm his Chapter 13 plan, including his proposal to reject the Contract. *Id.* at 12. Under the "business judgment" rule, a bankruptcy court should approve rejection of an executory Contract unless the debtor's reasoning behind rejection "is so manifestly unreasonable that it could not be based on sound business judgment." *Id.* at 13 (quoting *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir.

2 – OPINION AND ORDER

2007)). The court found that Mr. Truong failed to offer any evidence that he was exercising sound business judgment and rejected his plan. *Id.*

The bankruptcy court permitted Mr. Truong twenty-eight days to file an amended plan. Appellant's Mot. [ECF 1] at 2. Mr. Truong filed his amended plan with a declaration regarding his business reasons for proposing rejection of the Contract, which mentioned the expected cash flow of the Airbnb Property and the anticipated tax burden of the sale. *Id.* at 2–3. The Merrells and Mr. Crandall filed objections, citing the "law of the case" doctrine. *Id.* at 3. The court concluded that the business judgment rule applies and applied the law of the case doctrine, holding that Mr. Truong could not present new evidence justifying rejection of the Contract because it should have been presented at the confirmation hearing. Appellee's Resp. [ECF 4] at 4.

Mr. Truong seeks leave to appeal two issues in the bankruptcy court's ruling: (1) whether Mr. Truong is required to show a business justification to reject the Contract; and (2) whether the bankruptcy court erred in applying the law of the case to prevent Mr. Truong from presenting evidence of a business justification which he did not provide at the initial confirmation hearing. Appellant's Mot. at 3. Mr. Crandall responds that Mr. Truong has not shown that "exceptional circumstances" merit immediate review of those issues. Appellee's Resp. [ECF 4] at 6.

## LEGAL STANDARD

Under 28 U.S.C. § 158(a)(3), district courts have jurisdiction to hear appeals from interlocutory orders with leave from the court. FRBP 8004 provides that a motion for leave to appeal must include the facts necessary to understand the question presented, the question itself, the relief sought, the reasons why leave to appeal should be granted, and a copy of the interlocutory order and related opinion. Fed. R. Bankr. P. 8004(1). The standard for granting a motion for leave is not included in the Rules, but Ninth Circuit courts have applied a three-factor test requiring "(1)

that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). Courts approach motions for leave conservatively; a motion for leave "should not be granted unless refusal would result in wasted litigation and expense" and the three factors are all met. *In re NSB Film Corp.*, 167 B.R. 176, 180 (9th Cir. B.A.P. 1994).

## DISCUSSION

The questions presented by Mr. Truong's motion are:

(1) whether the business judgment rule applies to court approval of a debtor's proposal to reject a real estate contract under 11 U.S.C. § 365 in a Chapter 13 plan; and
(2) whether the law of the case doctrine prevents a bankruptcy court from considering additional evidence where the debtor files a modified plan following a prior court order denying confirmation of the debtor's initial plan.

### I. Both questions contain controlling questions of law.

The first factor is whether there is a controlling question of law. A "controlling question of law" is one that "could materially affect the outcome of litigation" if resolved on appeal. *In re Cement*, 673 F.2d at 1026.

#### A. Business Judgment Rule

The applicability of the business judgment rule to proposals in Chapter 13 plans to reject an executory contract under Section 365 is a pure question of law. Mr. Crandall's argument that the bankruptcy court made a factual determination when it decided that Mr. Truong did not carry his burden is unavailing. *See* Appellee's Resp. [ECF 4] at 6–7. Mr. Truong is not appealing the bankruptcy court's determination that he did not meet his burden; he is appealing the court's

characterization of his burden of proof. This question is controlling because it was the basis for the bankruptcy court's rejection of Mr. Truong's initial plan. *See* Mem. Decision [ECF 1] at 13.

### B. Law of the Case

There are two prisms through which one may consider Mr. Truong's question about the law of the case doctrine. The first way of characterizing this question is by asking whether the law of the case may ever be applied in this context in the first place. The second way of characterizing this question is by asking whether the bankruptcy judge erred in his use of discretion to apply the doctrine here. I will address each in turn. Either way, Mr. Truong's question is a controlling one because the law of the case was the basis for the bankruptcy court's rejection of his amended plan. *See* Hearing Tr. [ECF 7] at 27–28.

The first way of characterizing Mr. Truong's question targets the applicability of the law of the case doctrine to this context in the first place. This is a pure question of law. It concerns the tension between the liberal standards for modification of Chapter 13 plans and the policy underlying the law of the case doctrine, which involves a disinclination to re-open settled issues during ongoing litigation. *See Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (law of the case "expresses the practice of courts generally to refuse to reopen what has been decided").

The second way of characterizing Mr. Truong's question targets the bankruptcy judge's decision in this specific case to apply the law of the case doctrine. This is a factual question. The law of the case should not be applied when "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Southwest Marine Inc. v. Danzig*, 217 F.3d 1128, 1135 n.8 (9th Cir. 2000). The law of the case should also not be applied when a manifest injustice would result. *Thomas v. Bible*, 983 F.2d

5 – OPINION AND ORDER

152, 155 (9th Cir. 1993). Whether the bankruptcy judge correctly decided that no exceptions apply is a factual question in part about the nature of the new evidence Mr. Truong adduced. To determine how I should view this question, I turn to the hearing transcript to confirm whether the bankruptcy judge truly made a ruling on the exceptions to the law of the case doctrine.

During the confirmation hearing on June 5, 2023, the bankruptcy judge thoroughly analyzed whether the law of the case should apply in the first place. Then the judge transitioned, stating that "the next question is whether the Court should decline to apply the doctrine" because of the exceptions mentioned above. Hearing Tr. [ECF 7] at 27. The judge found that his first decision was not "clearly erroneous," that "[t]here has been no intervening changes in the law," and that Mr. Truong did not adduce substantially different evidence. *Id.* at 27–28. In so finding, the judge reviewed and quoted Mr. Truong's offered declaration, stating that "[t]he only assertion that is new or different from Truong's earlier testimony during the evidentiary hearing on his initial plan is that he may suffer an undetermined amount of capital gains tax if the sale closes." *Id.* Finally, the judge also found that there are no changed circumstances and a manifest injustice would not arise by applying the doctrine.

I find that the bankruptcy judge did make a ruling on whether he should use his discretion to apply the law of the case doctrine here. Because an appeal of this decision necessarily includes a question of fact, Mr. Truong's Motion for Leave fails on this prong.

**II.    There is no substantial ground for difference of opinion on either question.**

To determine whether there is a substantial ground for difference of opinion, courts "must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Substantial ground for difference of opinion "exists when the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, . . . or if novel

and difficult questions of first impression are presented." *Id.* (internal quotations omitted). It is not enough for an issue to be one of first impression; it must be novel or difficult, or otherwise be one "on which fair-minded jurists might reach contradictory conclusions." *Id.* at 634; *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

### A. Business Judgment Rule

There is no substantial ground for difference of opinion on whether the business judgment rule applies to the rejection of a real estate purchase contract in Chapter 13 because the circuits are not in dispute on this question and it is not a novel or difficult issue of first impression.

Bankruptcy Code § 1322(b)(7) provides that a Chapter 13 plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease "subject to section 365 of this title." 11 U.S.C. § 1322(b)(7). Section 365 authorizes a debtor to assume or reject an executory contract "subject to court approval." 11 U.S.C. § 365(a). The Supreme Court endorsed use of the business judgment rule under Section 365(a) as early as 1943. *Grp. of Institutional Inv'rs v. Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 318 U.S. 523, 550 (1943) ("[T]he question whether a lease should be rejected and if not on what terms it should be assumed is one of business judgment."). And when discussing whether a higher standard should apply to collective bargaining agreements, the Supreme Court has acknowledged that "the traditional 'business judgment' standard [is] applied by the courts to authorize rejection of the ordinary executory contract." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984).

Mr. Truong argues that the Ninth Circuit has spoken otherwise in *In re Alexander*, 670 F.2d 885 (9th Cir. 1982). However, this case was decided before the phrase "subject to section 365 of this title" was added to the Bankruptcy Code in 1984. *In re Safakish*, Case No. 18-50769 MEH, 2018 WL 5621783, at *5 (Bankr. N.D. Cal. Oct. 29, 2018). The court in *In re Safakish* denied a

7 – OPINION AND ORDER

debtor's motion to reject a settlement agreement because it found that it would not be in the best interests of the creditors. *In re Safakish*, 2018 WL 5621783, at *6. The business judgment rule is consistently applied under Section 365(a) because of the clause "subject to court approval."

Mr. Truong further argues that reasonable minds can differ on the question of the applicability of the business judgment rule because courts have issued conflicting decisions. Appellant's Mot. [ECF 1] at 6–7. He relies on distinguishable cases involving personal property leases and appears to argue that Section 365(a) should apply differently in Chapter 13 cases than it does in Chapter 11 cases. First, the cases involving personal property leases are not applicable here because a personal property lease is deemed rejected if not assumed at the conclusion of a confirmation hearing, which is not the case for real property sales contracts. 11 U.S.C. § 365(p) ("If a lease of personal property is rejected or not timely assumed . . . [it] is no longer property of the estate . . . ."). Second, there is no indication in the case law that courts treat rejection of executory contracts differently when they arise under Chapter 11 or Chapter 13 bankruptcy plans.

## B. Law of the Case

I assume here, for the purposes of this Opinion, that Mr. Truong's question is limited to the legal question of whether the law of the case doctrine may be applied in this context in the first place. There is no substantial ground for difference of opinion on this question because it is not a novel or difficult issue of first impression.

The law of the case doctrine expresses the practice of courts generally to refuse to reopen issues that have been decided. *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997), *rev'd on other grounds*. It is a jurisprudential doctrine which applies when the issue in question was decided either expressly, or by necessary implication in the previous disposition. *Id.*, *Thomas v. Bible*, 983 F.2d at 154. The Ninth Circuit has held that the doctrine applies to interlocutory orders as it was

created to avoid reconsideration of settled matters during a single continuing lawsuit. *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1097 (9th Cir. 1994). Here, the bankruptcy court's decision to reject Mr. Truong's initial plan was an interlocutory decision.

The bankruptcy judge acknowledged, as I do here, the tension between the liberal standards for modification of Chapter 13 plans and the policy underlying the law of the case doctrine. Hearing Tr. [ECF 7] at 25. But the policy reasons underlying the doctrine as described in the Ninth Circuit are fully applicable to Chapter 13 bankruptcy proceedings. *Id.* at 27. Litigants in bankruptcy proceedings have the same interest in certainty as other litigants, and bankruptcy courts have the same interest in judicial economy. Other courts have invoked these policy reasons to support applying the law of the case in the context of an amended plan. *E.g.*, *In re Budd*, No. 20-21419-ABA, 2022 WL 660591, at *7 (D.N.J. Mar. 4, 2022) ("The Debtor had his day in court."). Therefore, the question of applicability of the law of the case doctrine here is not a novel or difficult issue of first impression.

I further note that if I take up the second way of characterizing Mr. Truong's question, whether the bankruptcy judge erred in applying the doctrine in this case, there is still no ground for substantial difference of opinion. A court's decision whether to apply the doctrine is reviewed for abuse of discretion. *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016). Here, the judge acknowledged the exceptions where the doctrine should not be applied. Hearing Tr. [ECF 7] at 27. The judge acknowledged that Mr. Truong presented new information but found it vague and hypothetical. *Id.* at 18. Bearing the relevant standard in mind, a fair-minded jurist could not conclude that the judge abused his discretion.

### III. An immediate appeal would likely materially advance the ultimate termination of the litigation.

To determine whether an immediate appeal would materially advance the ultimate termination of the litigation, courts focus on whether an interlocutory appeal would facilitate the disposition of the action or resolve an issue in the case. *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1067–68 (D. Haw. 2013). An interlocutory appeal need not have a final, dispositive effect on the litigation to meet this standard. *Reese*, 643 F.3d at 688. In *Reese*, it was sufficient that reversal "may" have taken the parties' control claims against the defendants "out of the case." *Id.* In *In re Cement*, review of a judge's recusal decision was not granted in part because it "could in no way materially affect the outcome of the litigation." 673 F.2d at 1027.

Because Mr. Truong's Motion for Leave fails on prongs one and two, I need not reach this prong. That said, I find for the purposes of this opinion that an immediate appeal would likely materially advance the ultimate termination of this litigation. I acknowledge that the creditors have other objections to Mr. Truong's Chapter 13 plan. Hearing Tr. [ECF 7] at 5–6. The bankruptcy court noted that these objections "may require another evidentiary hearing, so the parties agreed to defer consideration of those issues until the Court decided" the issues of the applicability of the business judgment rule and the law of the case. *Id.* That said, the standard for this prong is not whether an interlocutory appeal would certainly resolve the case, but whether it may materially affect the outcome. Here, if Mr. Truong prevailed on an appeal, he would either not need to meet the business judgment rule, or the bankruptcy court would consider his declaration describing the business reasons for his proposal. This could cause the bankruptcy court to accept Mr. Truong's proposal to reject the Contract, bringing a key issue in this litigation closer to resolution.

10 – OPINION AND ORDER

## CONCLUSION

For the reasons given above, I DENY Appellant's Motion for Leave to Appeal Interlocutory Order [ECF 1].

IT IS SO ORDERED.

DATED this 9th day of November, 2023.

MICHAEL W. MOSMAN
Senior United States District Judge

11 – OPINION AND ORDER